1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| WILL CO. LTD. a limited liability company organized under the laws of Japan, Plaintiff, | **Case No. 3:20-cv-05802-BHS** |
| | **DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| vs. | |
| KA YEUNG LEE, an individual; YOUHAHA MARKETING AND PROMOTION LIMITED, a foreign company; and DOES 1-20, d/b/a THISAV.COM | **Note On Motion Calendar April 2, 2021** |
| | **Oral Argument Requested** |
| Defendants | |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### Introduction

In the present case, Plaintiff, a private *Japanese* limited liability company headquartered in *Tokyo* brings this action against a *Hong Kong*-born individual (who is a permanent resident of *Hong Kong,* temporarily residing in *Canada* on a work visa) and a foreign corporation based in *Hong Kong,* concerning a website that is: visited primarily by viewers from *Japan, Taiwan, and Hong Kong;* operated entirely out of *Hong Kong;* supported by ads placed on the website by ad brokers located in *Canada, Costa Rica, and Spain* (all of which were engaged from *Hong Kong*)*;* displaying user-generated videos with *Japanese* titles that are primarily in the *Japanese* language. What is entirely lacking in the present action, however, is any relevant, continuing, or substantial connection to *Washington* or to the *United States* as a whole.

Undeterred by a complete lack of facts necessary to make jurisdiction in this Court proper or even remotely plausible, yet apparently intent on making the Western District of Washington the hub for Japanese-hardcore-porn-related copyright litigation against foreign defendants,[1] Plaintiff instead peppers its complaint with technical jargon intended to obfuscate the lack of minimum contacts between the Defendants and the forum and leave the Court with the vague impression that "there must be something there."  There is not.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Ka Yeung Lee ("Mr. Lee") and Youhaha Marketing and Promotion Limited ("YMP") move for the dismissal of Plaintiffs' Complaint. In support of their Motion, Defendants state as follows.

### Facts

A. **Youhaha Marketing and Promotion Limited and ThisAV.com**

Youhaha Marketing and Promotion Limited ("YMP") is a limited company registered in the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"). Declaration of Janus Tam on behalf of Youhaha Marketing and Promotion Limited, in Support of

---

[1] The present case is one of two brought by the same Plaintiff within a span of two-months, with a third seemingly in the works.  *See, Will Co. Ltd. v. Fung, et al.,* Docket No. 20-cv-05666-RSL and *In Re: Cloudflare Inc re: "share.videos.se",* Docket No. 20-mc-05045.

Case No. 3:20-cv-05802
Motion to Dismiss

1

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

Defendants' Motion to Dismiss ("YMP Decl."), ¶1.   YMP is the owner and operator of the website ThisAV.com.  *Id.*, ¶1-2.   YMP is operated entirely from and based out of Hong Kong.  *Id.*, ¶3.   YMP has owned and operated the website "ThisAV.com" (the "website") entirely out of Hong Kong.  *Id.*, ¶¶2-3.

ThisAV.com is an adult video website that displays adult videos uploaded by users of the website.  *Id.*, ¶4.   As of February 23, 2021, there were a total of 221,541 videos on ThisAV.com.  *Id.*, ¶5.   Neither YMP nor ThisAV.com create or upload any of the videos on ThisAV.com, rather, all videos on ThisAV.com are uploaded by visitors to the website.  *Id.*, ¶4.   Users are not paid for uploading videos to ThisAV.com, nor does YMP does not have a commercial relationship with users.  *Id.*, ¶9.

ThisAV.com is free to use: no users from the United States (including Washington), or anywhere else for that matter, make any payments to YMP for viewing any videos on the website.  *Id.*, ¶39.   The majority of the videos on ThisAV.com have titles written in the Japanese alphabet and are themselves in the Japanese language.  *See id.*, ¶6. ThisAV.com is not targeted at the United States, or any country in particular, but rather the entire world of Internet users.  *Id.*, ¶¶29-30.

All of the work that YMP performs in operating ThisAV.com is performed out of Hong Kong.  *Id.*, ¶13.   YMP has not engaged in any persistent course of conduct in Washington or the United States.  *See, id.*, ¶¶12-13, 16-30.   YMP has never done business in the United States nor in Washington.  *See, id.*   YMP has no employees nor offices in the United States or Washington, nor does it have employees that visit the United States or Washington for business purposes.  *Id.*, ¶¶23-24.   YMP has never paid taxes in or to the United States.  *Id.*, ¶27.   YMP does not have a bank account in the United States.  *Id.*, ¶25.   YMP has never owned or leased real estate in the United States (including Washington).  *Id.*, ¶26.   The only connection that ThisAV.com has with the United States at all is that ThisAV.com's servers are hosted by GorillaServers, Inc., in Ogden, Utah.  *See id.*, ¶¶14-15.   The primary reason that ThisAV.com utilizes GorillaServers is because it

Case No. 3:20-cv-05802
Motion to Dismiss

2

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

provides excellent connectivity to Japan, Taiwan, and Hong Kong, which is where the vast majority of ThisAV.com's users reside.  *Id.,* ¶14.  YMP arranged these hosting services for ThisAV.com from Hong Kong. *Id.* ¶15.

ThisAV.com utilizes Cloudflare to provide domain name resolution services, content delivery networks, and DDoS protection (distributed denial of services attack).  *Id.,* ¶16.  YMP engaged Cloudflare to provide these services for ThisAV.com, using the self-service options on Cloudflare's website from YMP's workspace in Hong Kong.  *Id.*

 Cloudflare does not provide an account manager for ThisAV.com's account.  *Id.,* ¶17.  YMP uses Cloudflare's services for ThisAV.com's worldwide use (the vast majority of which – over 95% -  involves users outside of the United States).  *See id.,* ¶¶16, 57-59.  To the extent that Cloudflare uses servers in the United States in connection with ThisAV.com, it is not at the direction of YMP, and rather is the result of Cloudflare's own internal deliberation or processes. *Id.,* ¶16.

ThisAV.com's website's layout was derived from a template and source code provided by mediaxxxscript.com ("Mediaxxx").  *Id.,* ¶31. The Mediaxxx website is now defunct, and it is unclear what company and from what jurisdiction it was operated.  *See id.* The Mediaxxx services for ThisAV.com were obtained by YMP from of Hong Kong.  *Id.*  This generic website template from Mediaxxx contained boilerplate language and references to "DMCA" and "2257" as found on the bottom of ThisAV.com's site.  *Id.,* ¶32.  At the bottom of the pages of ThisAV.com, the following statement is listed: "版權 © 2009-2021 ThisAV.com - 世界第一中文成人娛樂網站, 保留所有權利"  Despite this statement containing the "©" symbol, YMP does not hold any United States Copyrights, rather, this statement was included in the Mediaxxx website script template which accounts for this reference.  *See id.,* 33.

All of ThisAV.com's revenue comes from advertisements.  *Id.,* ¶40.  Almost all of ThisAV.com's advertisements have come from YMP's relationship with several foreign advertising brokers: Tiger Media, Inc. d/b/a JuicyAds, a Canadian corporation registered in

Case No. 3:20-cv-05802
Motion to Dismiss

3

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

Saskatchewan ("JuicyAds"); Tomksoft S.A. d/b/a PopAds which is a Costa Rican joint stock company ("PopAds"); and ExoClick, S.L. d/b/a ExoClick, which is a Spanish company based in Barcelona ("ExoClick").[2]  *Id.* ¶¶ 20, 41. YMP does not have any direct relationship with the end-advertisers (the advertisers whose ads appear on ThisAV.com) that are acquired by JuicyAds, PopAds, or ExoClick.  *Id.*  Instead, JuicyAds, PopAds, or ExoClick, have the direct relationship with these end-advertisers.  *Id.*, ¶41.  YMP contracted with JuicyAds, PopAds, and ExoClick for ThisAV.com from its workspace in Hong Kong.  *Id*., ¶¶20, 41.  YMP does not sell the advertisements itself and does not have any direct relationship with or interactions with the end-clients (the advertisers whose ads actually appear on ThisAV.com).  *Id*., ¶41.  Instead, ThisAV.com makes available to the broker (JuicyAds, PopAds, or ExoClick) "space" on the ThisAV website, and the broker then sells that space as it sees fit to its own clients.  *Id.*  A client buys (from the broker) the right to display advertisements in the space provided on ThisAV.com so long as they comply with the law and the broker's own rules.  *Id.*

YMP does not cause any specific advertisements to be directed to visitors from specific locations (such as Washington or the United States).  *Id.*, ¶43.  To the extent that advertisements are directed to specific locations at all (a process called "geolocation"), that is done at the sole discretion of Juicy Ads, PopAds, or ExoClick. *Id.*, ¶¶43-47.  YMP has only ever entered into a direct advertising agreement forThisAV.com with one individual advertiser, who was located in Hong Kong, and that advertisement was not in any way directed to the United States.  *Id.*, ¶42.

Because YMP plays no role in the selection of advertisements (with the sole exception of the one Hong Kong advertiser described above), YMP does not target the residents of any given location through the use of advertisements, it does not direct the advertisements themselves, and certainly does not itself take any steps to target the residents of either Washington or the United States.  *Id.*, ¶¶43-49.  Moreover, to the extent that advertising links on ThisAV.com redirect to

---

[2] YMP previously had an agreement with another advertising broker in respect to advertisements on ThisAV.com, Mediaclick Solutions, Inc. which was based out of Quebec, Canada, but YMP no longer does business with this company. *See id.*, ¶21.

Case No. 3:20-cv-05802
Motion to Dismiss

4

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

companies based in the United States, YMP does not have direct relationships with these companies.  *See, id.* ¶¶43-51.  For example, YMP does not have contractual relationships with StackPath, LLC or Multi Media LLC.  *Id.*, ¶51.

ThisAV.com has visitors from over 200 distinct countries around the world.  *Id.*, ¶52. From April 1, 2020 through June 30, 2020, (the "Time Period"), approximately 4.6% of ThisAV.com's traffic came from the United States.  *Id.*, ¶56.  The vast majority of users of ThisAV.com come from countries outside of the United States.  During the Time Period, Japan (52.5%), Taiwan (15.7%), and Hong Kong (15.4%) generated significantly more traffic to ThisAV.com than the United States. *Id.*, ¶57.  Indeed, approximately 95.4% of ThisAV.com users came from outside the United States during the Time Period.  *Id.*, ¶58.  Moreover, from the one-year period of March 1, 2020 through February 28, 2021, more ThisAV.com users came from Japan (54.1%), Taiwan (15.8%) and Hong Kong (15.7%) than the United States (3.9%) during this one-year period.  *Id.*. ¶59.

Users of ThisAV.com do not need to create an account, register, or sign in to view videos on ThisAV.com.  *Id.*, ¶60.  To sign up for an account with ThisAV.com, a user does not need to verify what country he or she is visiting from; rather, a user needs to create a username and password, submit and verify an email address, and certify that he or she is at least 18 years old. *Id*., ¶61.  In order to upload videos, a user must sign up for an account with ThisAV.com in the manner described above.  *Id.*, ¶62.

B.  **Ka Yeung Lee**

Mr. Lee was born in in Hong Kong.  Declaration of Ka Yeung Lee in Support of Defendants' Motion to Dismiss ("Lee Decl."), ¶2.  Mr. Lee has lived in Hong Kong for almost his entire life, until recently, when in September 2020, he moved to Canada on a work visa unrelated to his involvement in with YMP and ThisAV.com. *Id.*, ¶¶2,4.  Mr. Lee is a permanent resident of Hong Kong.  *Id.*, ¶3.  Mr. Lee is a Director of YMP, but he does not own or operate the ThisAV.com website in his personal capacity, rather, YMP does.  *Id.*, ¶¶6-8.  All work that Mr.

Case No. 3:20-cv-05802
Motion to Dismiss

5

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone: 206-436-0900

Lee did for ThisAV.com, he did in his capacity as the director of YMP and not in his personal capacity. *Id.*, ¶8.  Mr. Lee has not performed services for ThisAV.com on behalf of YMP since he moved to Canada. *Id*., ¶4.  Mr. Lee has never spent any of his own personal funds in respect to the ThisAV.com website. *Id.*, ¶17.  All substantive work that Mr. Lee performed on behalf of YMP for ThisAV.com was performed from his workspace in Hong Kong, including: engaging with Cloudflare, Inc. from Hong Kong; setting up ThisAV.com with the advertising brokers, JuicyAds, PopAds, and ExoClick from Hong Kong; engaging with histats.com to obtain website visitor analytics for ThisAV.com by using histats.com's self-service option; engaging with a server company to obtain hosting services for ThisAV.com; and purchasing the domain name of ThisAV.com. *Id.*, ¶¶9-16.  Mr. Lee has no personal commercial relationships with users of ThisAV.com, nor entities whose ads appear on ThisAV.com. *See, id.*, ¶20.  Mr. Lee did not upload any of the allegedly infringing files referenced in the Complaint in this matter, did not direct anyone to upload the files; nor does he have any knowledge that anyone on behalf of YMP or ThisAV.com uploaded the allegedly infringing files referenced in the Complaint. *Id.* ¶19.

Mr. Lee has not personally engaged in any persistent course of conduct (or any conduct at all) in Washington or the United States. *See id.*, ¶¶21-30.  Indeed, Mr. Lee has never even traveled to the United States. *Id.*, ¶23.  Mr. Lee does not have any personal business dealings in the United States, does not have employees who live in or regularly visit the United States, does not have a bank account in the United States, and does not have a United States telephone number. *Id.*, ¶¶24-26, 28, 30.  Mr. Lee has never paid taxes in the United States, nor owned or leased real property in the United States. *Id.*, ¶¶27, 29.  Mr. Lee does not currently hold a visa to visit the United States. *Id.*, 32.  It would be burdensome and costly for Mr. Lee to travel to Washington or the United States for trial or other proceedings in this case. *Id.*, ¶¶31-32.

**Argument**

## I.  <u>Legal Standard Under Rule 12(b)(2)</u>

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

Case No. 3:20-cv-05802
Motion to Dismiss

6

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

plaintiff bears the burden of demonstrating that jurisdiction is appropriate. …A plaintiff cannot simply rest on the bare allegations of his Complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction*." Microsoft Corp. v. Gulfcoast Software Sols., LLC*, 2016 U.S. Dist. LEXIS 121794, at *5 (W.D. Wash. Jan. 4, 2016)(citations omitted). In making its determination, the Court must analyze whether personal jurisdiction exists over each defendant separately. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

Additionally, this Court must take extra care before exercising jurisdiction over foreign defendants. As the Supreme Court and the Ninth Circuit have cautioned, "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987). *See also Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir. 1988) ("The Supreme Court, though, has cautioned against extending state long arm statutes in an international context.... This circuit has also stated that litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist.").

**II.**     **The Court Lacks Personal Jurisdiction Over Either Lee, a Hong Kong Permanent Resident Currently Residing in Canada or YMP, a Hong Kong Limited Company.**

Although a determination of personal jurisdiction under a state's long-arm statute is often a two-step process – consideration of whether the state statute authorizes an exercise of jurisdiction, followed by a constitutional due process analysis – where, as here, the state's long-arm statute extends to the limits of the United States Constitution's Due Process Clause, the two inquiries merge into one. *Easter v. Am. W. Fin*., 381 F.3d 948, 960 (9th Cir. 2004). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line, supra* at 462.

Case No. 3:20-cv-05802
Motion to Dismiss

7

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

"Thus, the only question remaining for a Washington district court is whether the Court's exercise of jurisdiction comports with the limitations imposed by due process. …A court may not exercise jurisdiction over a defendant if that exercise of jurisdiction 'offend[s] traditional notions of fair play and substantial justice.'  Fair play and substantial justice mandate that a defendant has minimum contacts with the forum state before it may be hailed into a court in that forum. …The extent of those contacts can result in either general or specific jurisdiction." *Estate of Kekona, supra* at *2-3 (citations omitted).  A similar analysis occurs with respect to federal long arm jurisdiction under Fed. R. Civ. P. 4(k)(2). Under Rule 4(k)(2), "a court may exercise jurisdiction when three requirements are met. First, the claim against the defendant must arise under federal law.... Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction.... Third, the federal court's exercise of personal jurisdiction must comport with due process." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).  In the present case, Will Co. has failed to allege facts sufficient to subject either of the defendants to general or specific jurisdiction in either Washington or the United States as a whole.

A.   **General Jurisdiction**

The question of general jurisdiction need not detain the court for long as the Complaint is devoid entirely of a single allegation that could result in an exercise of general jurisdiction over either defendant. "To establish general personal jurisdiction, the plaintiff must demonstrate the defendant has sufficient contacts to 'constitute the kind of continuous and systematic general business contacts that 'approximate physical presence.''" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002).

In the present case, Mr. Lee has no connections whatsoever with either Washington or the United States. Born in Hong Kong, Mr. Lee is a permanent resident of Hong Kong and has resided in Hong Kong for almost his entire life. Lee Decl., ¶¶2-3.  For the last six months, Mr. Lee has resided in Canada on a work visa unrelated to his work for YMP or ThisAV.com. *Id.*, ¶4.  Mr. Lee has never once visited the United States. *Id.*, ¶23. He owns no real estate in the United States;

Case No. 3:20-cv-05802
Motion to Dismiss

8

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

1

2

has no bank account in the United States; does not have a U.S. telephone number; does not pay

taxes in the United States; and performs no services within the United States.   *See, id*., ¶¶24-30.

3

Similarly, YMP lacks any connection to Washington or the United States. It has no offices in the

4

United States; no employees in the United States; no real estate in the United States; no bank

5

accounts in the United States; and pays no taxes in the United States. YMP Decl., ¶¶23-27.

6

Far from the Defendants having "substantial, continuous, and systematic" contacts with

7

Washington or the United States, the Defendants lack *any* such contacts and, as such, the Court

cannot exercise general jurisdiction over either defendant.

8

### B.     <u>Specific Jurisdiction</u>

9

To establish specific jurisdiction consistent with the limitations of the Due Process Clause

10

of the United States Constitution, the plaintiff must show that: (1) defendant purposefully directed

11

its activities at the forum; (2) plaintiff's claims arise out of defendant's forum-related activities;

12

and (3) the exercise of jurisdiction would be reasonable." *Microsoft Corp. v. Gulfcoast Software*

*Sols., LLC,* 2016 U.S. Dist. LEXIS 121794, at *7 (W.D. Wash. Jan. 4, 2016).

13

The Supreme Court has reaffirmed that this due process inquiry must focus "'on the

14

relationship among the defendant, the forum, and the litigation.'"  *Walden v. Fiore*, 571 U.S. 277,

15

283 (2014) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)). As the *Walden*

16

court explained:

17

For a State to exercise jurisdiction consistent with due process, the defendant's suit-

18

related conduct must create a substantial connection with the forum State. Two

19

related aspects of this necessary relationship are relevant in this case.

20

First, the relationship must arise out of contacts that the 'defendant *himself*' creates

21

with the forum State.... We have consistently rejected attempts to satisfy the

22

defendant-focused 'minimum contacts' inquiry by demonstrating contacts between

23

the plaintiff (or third parties) and the forum State....

24

Case No. 3:20-cv-05802
Motion to Dismiss

9

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

> Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Id.* at 284-85.

Additionally, in conducting its analysis, the Court is not concerned with a defendant's non-suit contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State. ... When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.")(citations and internal quotation marks omitted)).

As the Court will see, Plaintiff's allegations fail to satisfy *any* of the required three prongs, much less *all* three as is required for an exercise of jurisdiction to be proper.

### 1.    Purposeful Direction

Where, as here, Plaintiff's claims sound in copyright, a tort, the Court applies a purposeful direction analysis and asks whether Defendants have purposefully directed their activities at the forum (here, either Washington or the United States). *See, e.g., AMA Multimedia, Ltd. Liab. Co. v. Wanat,* 970 F.3d 1201, 1208 (9th Cir. 2020). "Where allegedly tortious conduct takes place outside the forum and has effects inside the forum, our circuit has examined purposeful direction using an 'effects test' based on *Calder v. Jones*…. Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1208-09. If Plaintiff cannot prove each prong, jurisdiction is lacking and the complaint must be dismissed.

### A.    Intentional Acts

Although the Ninth Circuit has found that owning and operating a website is an

Case No. 3:20-cv-05802
Motion to Dismiss

10

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

"intentional act," which would be sufficient to meet the first prong of the purposeful direction test (*AMA Multimedia, Ltd. Liab. Co.* at 1209) with respect to YMP, in the present case, there are no similar facts with respect to Defendant Lee that could qualify as an "intentional act" for jurisdictional purposes.  Mr. Lee neither owns nor operates ThisAV.com and, as such, he has taken no intentional act that would support an exercise of personal jurisdiction. Lee Decl., ¶¶6-8.

### B.    Expressly Aimed at the Forum

Plaintiffs' Complaint alleges four broad categories of actions which it suggests constitute express aiming at Washington or the United States: (1) the operation of a popular website that receives less than five percent of its traffic from the United States; (2) the use of ad brokers to place "geolocated" advertisements on the website; (3) contracting with a third-party server company located in the United States; and (4) a smattering of irrelevant and tenuous connections to the United States.

With respect to the first two categories, the Ninth Circuit has recently decided a case directly on point with near-identical facts, *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). Indeed, as the Court will see, to the extent the facts between the two cases differ at all, they are only in ways that would have made an exercise of personal jurisdiction *more* compelling in the *AMA Multimedia* case and yet the Ninth Circuit there nonetheless affirmed the District Court's dismissal of the action for a want of personal jurisdiction. The present case presents a markedly weaker argument for personal jurisdiction and, as such, Plaintiff's case must be dismissed.

### 1.    The Operation of a Universally Accessed Website.

Plaintiff alleges that there were approximately 1 million page views originating from the United States during the three-month period ending June 30, 2020, suggesting that the raw number of visitors to the website from the United States supports an exercise of jurisdiction over the owners and operators of the website.  First Amended Complaint, ¶13.

Preliminarily, as a factual matter, it should be noted that, even by Plaintiff's estimation,

Case No. 3:20-cv-05802
Motion to Dismiss

11

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

fewer than 5% of all of the visitors to the website come from the United States. meaning that more than 95% of the website's visitors come from someplace other than the United States.  Indeed, more than 54% of the website's visitors come from Japan, 15.8% come from Taiwan, and 15.7% come from Hong Kong. YMP Decl. ¶59.  In any event, though, focusing on the raw number of visitors to the website – as opposed to the number of visitors to the website who allegedly viewed or downloaded Plaintiff's content (13 videos out of more than 221,400 hosted on the ThisAV website) – improperly focuses on contacts that are wholly unrelated to Plaintiff's claims.

On this point, the Supreme Court's recent decision in *Bristol-Myers Squibb* is particularly instructive. In that case there were "more than 600 plaintiffs, most of whom are not California residents," who "filed [a] civil action in a California state court against Bristol-Myers Squibb Company (BMS), asserting a variety of state-law claims based on injuries allegedly caused by a BMS drug called Plavix."  137 S.Ct. at 1777. The Supreme Court noted that "BMS does sell Plavix in California. Between 2006 and 2012, it sold almost 187 million Plavix pills in the State and took in more than $900 million from those sales."  *Id.* Nevertheless, the Supreme Court rejected the argument that Defendants' substantial contacts with California should be considered for specific jurisdiction purposes because those contacts did not relate directly to the claims actually brought by the non-resident plaintiffs:

> Our settled principles regarding specific jurisdiction control this case. In order for a court to exercise specific jurisdiction over a claim, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." ...When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State....

*Id.* at 1781 (internal citations omitted).

Indeed, the Ninth Circuit recently considered – and flatly rejected – Plaintiff's position in

Case No. 3:20-cv-05802
Motion to Dismiss

12

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

*AMA Multimedia.* There, the Court was similarly faced with foreign defendants who operated a popular adult entertainment website that had allegedly infringed on Plaintiff's copyrighted videos. There, as here, the defendants operated "an internationally available website which hosts adult videos and allows users to search for, select, and watch them." *Id.* at 1204. Unlike the present case, in *AMA Multimedia,* the videos at issue were American-produced, in English, and accounted for 19.21% of the defendant website's overall traffic, making the United States its largest market." *AMA Multimedia,* 970 F.3d at 1204-05.

Nevertheless, the Ninth Circuit found personal jurisdiction to be lacking:

although, according to AMA, ePorner "features a significant portion of U.S.-based content from producers like AMA and U.S.-based models," this does not mean ePorner's subject matter is aimed at the U.S. market… ePorner's content is primarily uploaded by its users, and the popularity or volume of U.S.-generated adult content does not show that Wanat expressly aimed the site at the U.S. market. …Although Wanat may have foreseen that ePorner would attract a substantial number of viewers in the United States, this alone does not support a finding of express aiming.

…Here, nearly 20% of ePorner's traffic comes from U.S. users. But this does not establish that Wanat expressly aimed at the U.S. market…

… ePorner's forum-based traffic, absent other indicia of Wanat's personal direction, does not establish that Wanat tailored the website to attract U.S. traffic.

*Id.* at 1210-11.

Here, even if the raw number of visitors to the website were an appropriate factor for consideration, the number of visitors to the ThisAV website is even less persuasive than those

Case No. 3:20-cv-05802
Motion to Dismiss

13

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone: 206-436-0900

presented to the Ninth Circuit in *AMA Multimedia.* Unlike the facts in *AMA Multimedia*, the United States is *not* ThisAV's biggest source of visitors, but rather represents less than 5% percent of ThisAV's overall traffic.  *See* YMP Decl. ¶¶56-59. Instead, ThisAV's largest source of traffic is Japan with more than 54% percent of overall traffic, something that is not surprising given that ThisAV's videos are overwhelmingly in Japanese.  *See, id.* ¶¶6, 59.

Ultimately, the raw number of visitors to the website from the United States fails to demonstrate that the website is expressly aimed at the United States or Washington.

2.   <u>Geolocation of Ads By Third-Party Advertising Broker</u>

Plaintiff also alleges that jurisdiction over the defendants is appropriate in this case because the website presents visitors with geolocated ads. This argument, too, was specifically rejected by the Ninth Circuit under identical circumstances:

> ePorner does not charge visitors; instead it generates revenue solely through advertising. ePorner contracts with a third-party advertising company that chooses the advertisements. The advertiser then "geolocates" the advertisements, meaning visitors to ePorner.com see advertisements based on their perceived location. For example, visitors thought to be in the United States see selected advertisements in English, while visitors thought to be in France see selected advertisements in French.

970 F.3d at 1204-05.

Nevertheless, the Ninth Circuit found personal jurisdiction lacking:

> AMA alleges, and Wanat's expert agreed, that ePorner uses geo-located advertisements, which tailor advertisements based on the perceived location of the viewer. This tailoring does not establish that Wanat *expressly aimed* ePorner at the United States. ePorner's geo-

Case No. 3:20-cv-05802
Motion to Dismiss

14

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

located advertisements, provided by a third-party advertising company ... are always directed at the forum: a viewer in the United States will see advertisements tailored to the United States while a viewer in Germany will see advertisements tailored to Germany.... If such geo-located advertisements constituted express aiming, ePorner could be said to expressly aim at *any* forum in which a user views the website... As a feature of the geo-located advertisements on ePorner's website, all users in every forum received advertisements directed at them. To find specific jurisdiction based on this would run afoul of the Supreme Court's directive in *Walden* and "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."

*Id.* at 1211.

Under similar facts, the D.C. Circuit Court also rejected personal jurisdiction based on the placement of geotargeted ads by a third-party ad broker, finding that such ads did not constitute purposeful availment:

Triple Up argues that Youku purposefully availed itself of the United States forum by passively permitting the videos to be streamed in the United States along with "geographically targeted" advertisements. Youku indisputably derives revenue from advertisements that accompany its videos, but Triple Up has not shown that Youku was in control of the advertisements' placement with particular films or "purposefully directed" them toward United States viewers.... Advertisers purchase Youku's online advertising services through third-party agencies. So while Youku "act[s] to maximize usage of [its] websites," ... Triple Up has not alleged facts plausibly showing that Youku played a material role in pairing advertisements with specific videos based on viewership....

Case No. 3:20-cv-05802
Motion to Dismiss

15

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

*Triple Up, Ltd. v. Youku Tudou, Inc.,* 2018 U.S.App.LEXIS 19699 (D.C. Cir. July 17, 2018) at *7-8. *See, also, Mireskandari v. Daily Mail & Gen. Trust PLC,* 2020 Va.Cir.LEXIS 104 (Fairfax Cir. Ct. July 27, 2020) (rejecting geotargeted ads as a basis for personal jurisdiction, particularly where such ads did not form the basis of plaintiffs' complaint).

The same result should obtain here: ads are placed on the ThisAV website by a third-party advertising brokers located in Canada, Costa Rica, and Spain. YMP Decl. ¶¶20, 41. Neither defendant has any say in what ads are displayed to a visitor, nor do they target ads towards visitors from any specific location. *Id.,* ¶¶41, 43-49. To the extent that geolocation takes place, it takes place because the advertising broker chooses to display its customers' ads to specific visitors. *Id.,* ¶¶43-48. And, to the extent that ads are geolocated, they are geolocated across the globe – just as they were in the *AMA Multimedia* case – evidencing no attempts to target the United States or Washington.

3.   Servers.

District Courts within the Ninth Circuit have repeatedly held that the use of a third-party server located within a jurisdiction is an insufficient basis to exercise specific personal jurisdiction where the server is located.  *See, e.g., Hungerstation LLC v. Fast Choice LLC,* 2020 U.S. Dist. LEXIS 5442, at *17-18 (N.D. Cal. Jan. 13, 2020)("Under Plaintiff's theory, the Northern District of California always would have jurisdiction in any case where a party hosts its data with a Silicon Valley company, even when that company is not a party to the litigation. 'Federal courts sitting in California could assert personal jurisdiction over foreign defendants in wholly foreign disputes.' …Here, all parties were formed under the laws of Saudi Arabia; all parties have their headquarters in Saudi Arabia; the apps at issue are for delivery services in Saudi Arabia and Bahrain; and Defendants do not have any property or employees in the United States. It would be unreasonable to hale Defendants into this forum merely because the parties contract with Bay Area technology companies to host their data, considering the lack of any other connection to this forum and to the United States in general"); *CrossFit, Inc. v. Fitness Trade sp. z o.o.,* 2020 U.S. Dist. LEXIS

Case No. 3:20-cv-05802
Motion to Dismiss

16

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

204853, at *15-16 (S.D. Cal. Nov. 2, 2020)("as other district courts in this circuit have noted, 'the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction.' … CrossFit fails to identify, and this Court has not located, any case finding purposeful direction where the defendant's contact with the forum state is limited to the physical location of third-party servers. If the location of a third-party server could alone create personal jurisdiction, every state's jurisdiction over nonresident defendants would increase dramatically—particularly in California due to Silicon Valley's technology industry"); *Dish Network, LLC v. Jadoo TV, Inc.,* 2020 U.S. Dist. LEXIS 209819, at *24-25 (C.D. Cal. Mar. 16, 2020)("the physical location of servers cannot confer the necessary contacts between a defendant and a forum for the exercise of personal jurisdiction"); *Rosen v. Terapeak, Inc.,* 2015 U.S. Dist. LEXIS 198786 (C.D. Cal. 2015) ("[T]he Court finds direction from other cases that have rejected the notion that the mere location of a server may give rise to personal jurisdiction"); *Man-D-Tec, Inc. v. Nylube Prods. Co., LLC,* 2012 U.S. Dist. LEXIS 69626 (D. Ariz. 2012) ("If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server.")

Courts in other circuits have held similarly.  *See, e.g., Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir. 2003) ("[W]e have described as 'de minimis' the level of contact created by the connection between an out-of-state defendant and a web server located within a forum."); *GreatFence.com, Inc. v. Bailey,* 726 F.App'x 260, 261 (5th Cir. 2018) (rejecting personal jurisdiction based on the location of defendant's server "particularly ... where, as here, the 'administration, maintenance, and upkeep of [the] website" occurred outside the jurisdiction); *BidPrime, LLC v. SmartProcure, Inc.,* 2018 U.S.Dist.LEXIS 180546, at *7 (W.D. Tex. 2018) ("Courts have repeatedly rejected the argument that a server's physical location is relevant to specific jurisdiction." (collecting cases)); *Amberson Holdings LLC v. Westside Story Newspaper,* 110 F.Supp.2d 332, 336 (D.N.J. 2000) (finding contacts with a server within the forum to be "de minimis, and to uphold jurisdiction on this basis would defy common reason.").

Case No. 3:20-cv-05802
Motion to Dismiss

17

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

4.      <u>Stuff and Nonsense.</u>

Finally, Plaintiff tosses around internet jargon and acronyms with the apparent intent that the Court be fooled into affording relevance to the irrelevant.

a.      <u>Cloudflare – CDN and DNS</u>

Plaintiff points to the website's use of Cloudflare to provide Content Delivery Network ("CDN") and Domain Name System ("DNS") as if it were relevant to an intent to target the United States. It is not. In the simplest terms, Cloudflare provides services (such as CDN and DNS) that make websites respond more quickly by shuttling information through servers located closer to the user. This is true no matter where in the world the user may be located.  Indeed, according to Cloudflare's website, the company provides such services to more than "25 million internet properties" and it "serve[s] data from 200 cities in over 100 countries around the world." *See* Declaration of Frank Scardino ("Scardino Decl."), ¶2. According to Cloudflare's website, it has dozens of servers located throughout cities in Asia, including Tokyo, Hong Kong, Osaka, Taipei, Shanghai, and Guangzhou.  *Id*., ¶3.

Mr. Lee signed ThisAV.com up for Cloudflare's services from Hong Kong and his only connection to Cloudflare was through the automated processes on their website. Neither of the defendants have anything to do with how Cloudflare allocates website traffic to optimize speed, but rather that is a function of Cloudflare's operations. YMP Decl. ¶16; Lee Decl. ¶14.

The Ninth Circuit addressed an identical argument in *AMA Multimedia* and found that a website's utilization of a company that provided local servers to speed traffic did not demonstrate an intent to target the United States. *AMA Multimedia, Ltd. Liab. Co*., 970 F.3d at 1212 ("the use of Tiggee to register certain domain names related to the website does not show targeting of the U.S. market. AMA contends that the use of Tiggee, which advertises itself as one of the fastest DNS providers in the United States, evidences targeting of the United States because of the speed such companies provide to U.S. website visitors. Use of a company that offers fast speeds in the

18

United States could be consistent with the desire to appeal to the U.S. market. But AMA has not provided evidence to suggest that Wanat chose this vendor or was motivated by a desire to appeal to the U.S. market or generate more U.S. users, as opposed to more users globally.")

So too here. YMP utilizes Cloudflare's services (as do 25 million others worldwide) to enhance the ThisAV's website's performance no matter where a user (including the 95% of users located outside the United States) may be located. This is the polar opposite of expressly aiming activities at the United States.

     b.    <u>Social Media Traffic</u>

Next, Plaintiff cites a number of social media sites from which the ThisAV.com website receives traffic, noting that some of the referring sites are U.S.-based, such as Youtube, Twitter, and Facebook. First Amended Complaint, ¶20. In other words, Plaintiff claims that it is somehow jurisdictionally relevant that an individual who was looking at a tweet on U.S.-based Twitter clicked a link that then brought that person to the ThisAV website. This is a lot like suggesting that it would be relevant that a *Japanese* visitor to the ThisAV website was using Google's chrome browser to surf the web when he visited the ThisAV website since Google is headquartered in California.

And, although it should not need to be said, the location of the website that a person was browsing **before** coming to ThisAV.com is not only irrelevant, but is precisely the type of "fortuitous" and "unilateral activity of a third part" that cannot form the basis of personal jurisdiction. *See, e.g., N. Coast Indus. v. K-Mart Corp.*, 1990 U.S. App. LEXIS 21074, at *3 (9th Cir. Dec. 4, 1990)("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'")(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *Kosta Int'l v. Brice Mfg. Co.,* 2014 U.S. Dist. LEXIS 107837, at *11 (W.D. Wash. Aug. 5, 2014).

     c.    <u>Passing References on the Website to U.S. Statutes</u>

Case No. 3:20-cv-05802
Motion to Dismiss

19

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

Finally, Plaintiff contends that passing reference to 18 U.S.C. §2257 (prohibiting underage models) demonstrates express aiming. It does not. Preliminarily, the reference exists because the ThisAV website was built using a template and source code provided by a now-defunct website, www.mediaxxxscript.com that contained such language.  *See* YMP Decl. ¶¶31-32.   Moreover, Plaintiff's claims do not arise out of the §2257 reference (or any passing reference to U.S. laws that might appear on the website) and, as such, those references are irrelevant to the jurisdictional analysis.

C.      Harm in the Jurisdiction

The final prong necessary for the Court to find that Defendants purposefully directed their conduct at the jurisdiction is proof that Defendants caused jurisdictionally significant harm, which was felt within the United States and which the Defendants knew would be felt within the United States. *See, e.g., Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir. 1993); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000); *Panavision Int'l, Ltd. P'ship v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998). *See also Calder v. Jones*, 465 U.S. 783, 789-90 (1984).  To appreciate just how completely Plaintiff misses the mark here, these factors need to be broken down. As the Court will see, Plaintiffs have failed to show: (1) that they suffered *any* harm related to Defendants' alleged actions; (2) that they suffered "jurisdictionally significant" harm in the United States; or (3) that defendants *knew* that the brunt of such harm would be felt within the United States.

Preliminarily, it should be noted that the Complaint does not actually allege *any* actual injury, as opposed to hypothetical injury. The Complaint alleges that certain of Plaintiffs' videos appeared on the ThisAV website without permission. The Complaint also alleges that the website itself is popular and visited by many people worldwide. The Complaint does not, however, even allege that *any* visitors to the ThisAV website *from the United States* actually viewed or downloaded any of the 13 videos that Plaintiff alleges were uploaded to the ThisAV website, a website that contains more than 221,400 different videos. Nor does the Complaint allege that any

Case No. 3:20-cv-05802
Motion to Dismiss

20

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

individual downloaded or accessed Plaintiff's content from the United States who would otherwise have purchased the content from Plaintiff.

Indeed, according to Plaintiffs' Complaint, Plaintiff does not even distribute its own videos within the United States, but rather it has an "exclusive digital licensing with Digital Commerce Inc. (Fanza)" and that it receives a revenue share from Fanza under that agreement. First Amended Complaint, ¶37. According to Digital Commerce Inc.'s website, that company, too, is headquartered in Tokyo, Japan. *See* http://digitalcommerce.co.jp/en/, last accessed Dec. 19, 2020.

Nevertheless, even if the Court could assume that Plaintiff suffered *some* measure of damage in the United States, it would be impossible for the Court to find that Plaintiffs had suffered *jurisdictionally significant* harm within the United States.

The Ninth Circuit and this Court have held that a corporation can suffer jurisdictionally significant harm both where the corporation has its principal place of business and where the alleged bad acts occurred. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002)("in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business"); *Stewart v. Kroeker*, 2005 U.S. Dist. LEXIS 56194, at *12 (W.D. Wash. Feb. 3, 2005)("The Ninth Circuit has recognized that the question of where a corporation suffers economic harm is 'somewhat metaphysical,' but recognized that 'a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business'"); *Fortress Secure Sols., Ltd. Liab. Co. v. Alarmsim, Ltd. Liab. Co.,* 2017 U.S. Dist. LEXIS 227298, at *15 (E.D. Wash. Nov. 29, 2017).

In the present case, Plaintiff readily acknowledges that its principal place of business is in Tokyo. *See* First Amended Complaint, ¶31. And, although Defendants deny that there were any "bad acts," any acts that Defendants took were indisputably taken in Hong Kong. *See* YMP Decl. ¶¶3, 13; Lee Decl. ¶¶4, 9.

Finally, it would be absurd to think that Defendants (or anyone for that matter) could have *known* that a Japanese-headquartered company that (apparently) distributes its Japanese-language

Case No. 3:20-cv-05802
Motion to Dismiss

21

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone: 206-436-0900

films through another Japanese company would have necessarily suffered harm within the United States as a result of unknown visitors posting videos to a universally-accessible predominantly Japanese-language website run out of Hong Kong, and visited primarily from individuals located in Japan, Taiwan, and Hong Kong. Given that it is legally insufficient for a Plaintiff to simply allege that a Defendants' actions had foreseeable consequences in a forum, an allegation of *unforeseeable* consequences surely fails the required legal test. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1070 (9th Cir. 2017)("The foreseeability of injury in a forum 'is not a 'sufficient benchmark' for exercising personal jurisdiction'");  *Nextune, Inc. v. McKinney*, 2013 U.S. Dist. LEXIS 75478, at *16-18 (W.D. Wash. May 29, 2013) ("Committing a 'foreign act with foreseeable effects in the forum state' is insufficient to support personal jurisdiction in the Ninth Circuit"); *Haugaard v. Fiskars Brands, Inc.,* 2014 U.S. Dist. LEXIS 65252, at *13 (W.D. Wash. May 12, 2014)(rejecting personal jurisdiction where "All of the evidence before the court points to one conclusion: that Mr. Orzeck did not know who Mr. Haugaard was or where he lived… and that he therefore did not aim any wrongful conduct at Washington").

Because the facts *disprove,* rather than *support* a finding that Plaintiff suffered jurisdictionally significant harm in the US, which Defendants knew would be felt within the US, Plaintiff's complaint must be dismissed for a lack of personal jurisdiction.

### 2.      Forum Related Activities

Even if Plaintiff had been able to prove that Defendants' activities were aimed at the forum, it would next have to show that Defendants' forum-related activities caused them harm, which it cannot do. This is so for two basic reasons: as is discussed in detail above, (1) Plaintiff has failed to allege any forum-related activities and (2) Plaintiff has failed to allege any harm arising out of those non-existent activities.

### 3.      An Exercise of Personal Jurisdiction Would Be Unreasonable

"For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.' …In addressing the question of reasonableness, we consider seven factors: (1) the extent of a

Case No. 3:20-cv-05802
Motion to Dismiss

22

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Panavision Int'l, Ltd. P'ship v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  Plaintiff fails each of the seven factors:

(1)    As is discussed in greater detail above, the operation of a universally-accessible website from Hong Kong, utilizing ad brokers in Hong Kong, Costa Rica, and Spain demonstrates no "interjection" at all.

(2)    The burden on the Defendants to defend an action in Washington or the United States would be great: Mr. Lee does not have a visa that would allow him to travel to the United States and YMP, which operates entirely out of Hong Kong, does not have any employees in Washington or the United States. *See* Lee Decl., ¶¶31-32; YMP Decl., ¶¶3, 24.

(3)    Exercising jurisdiction over the defendants would seriously impinge the sovereignty of Hong Kong. As the district court in *AMA* held (and the Ninth Circuit affirmed): "subjecting Wanat to suit anywhere in the United States would constitute a substantial intrusion on Poland's sovereignty. Wanat has no meaningful relationships with individuals or entities in the United States. Based on that, sovereignty concerns are particularly weighty. …The prospect that any individual in Poland can be sued anywhere in the United States because he is operating a website with advertising aimed at individuals in the United States would constitute a substantial exercise of power over Polish citizens. Sovereignty concerns weigh against jurisdiction being reasonable." *AMA*, 2017 U.S. Dist. LEXIS 228078, at *26.

(4)    In the present case, neither Washington nor the United States have any interest in providing a forum for the adjudication of the intellectual property claims of a Japanese company distributing its works through another Japanese company, which arise out of actions taken (if at all) in Hong Kong.

Case No. 3:20-cv-05802
Motion to Dismiss

23

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone: 206-436-0900

1

2        (5)    It would be ridiculous to think that either Washington or the United States

3  would be the most efficient locale for the resolution of a dispute between a company located in

4  Japan and Defendants located in Hong Kong. Not a single witness or relevant piece of evidence is

   likely to be found within Washington or the United States as a whole.

5        (6)    Finally, "The sixth and seventh factors can be considered together as

6  'whether an alternate forum exists, as well as the convenience and effectiveness of relief for the

7  plaintiff. …Plaintiff 'bears the burden of proving the unavailability of an alternative forum.'"

8  *AMA Multimedia LLC,* 2017 U.S. Dist. LEXIS 228078, at *27-28, citing *Core-Vent, supra.* Here,

9  Plaintiff has provided no facts from which the Court could conclude that Plaintiff could not litigate

   its claims in Japan or Hong Kong.

10       Because each of the seven factors favor the Defendants, an exercise of personal jurisdiction

11 would not be reasonable.

12                                    **Conclusion**

13       For the reasons stated hereinabove, Defendants' Motion to Dismiss for lack of personal

   jurisdiction should be allowed.

14
   **Dated March 11, 2021**                    **Respectfully Submitted:**

15
                                               _/s/ Philip Mann_____

16                                             Philip P. Mann, Esq. (WSBA No. 28860)
                                               Mann Law Group PLLC
17                                             403 Madison Ave. N. Ste.240
                                               Bainbridge Island, Washington 98104
18                                             Tel: 206-463-0900
                                               Email: phil@mannlawgroup.com
19

20

21                                             /s/ Valentin Gurvits_____

22                                             Valentin D. Gurvits (*pro hac vice pending*)
                                               Frank Scardino (*pro hac vice pending*)
                                               **BOSTON LAW GROUP, PC**
23                                             825 Beacon Street, Suite 20
                                               Newton Centre, Massachusetts 02459

24

Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

/s/ Evan Fray-Witzer
Evan Fray-Witzer (*pro hac vice pending*)
**CIAMPA FRAY-WITZER, LLP**
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

*Attorneys for Defendant*

Case No. 3:20-cv-05802
Motion to Dismiss

25

Mann Law Group PLLC
403 Madison Ave N. Ste 240
Bainbridge Island, WA 98110
Phone:  206-436-0900

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of

4

the Court using the CM/ECF system which will send notification of such filing to all parties who

5

have appeared in this matter.

6

DATED:  March 11, 2021                                     _/s/ *Philip P. Mann*_____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24