1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

WILL CO. LTD. a limited liability company
organized under the laws of Japan,

                    Plaintiff,

         vs.

KA YEUNG LEE, an individual; YOUHAHA
MARKETING AND PROMOTION
LIMITED, a foreign company; and DOES 1-
20, d/b/a THISAV.COM,

                    Defendants.

**Case No.:  3:20-cv-05802-BHS**

**PLAINTIFF WILL CO. LTD
OPPOSITION TO MOTION TO
DISMISS FOR LACK OF PERSONAL
JURISDICTION**

NOTE FOR MOTION:
April 2, 2021

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500 - (253) 383-4501 (fax)

Plaintiff Will Co. Ltd (hereinafter "Will Co" or the "Plaintiff"), through its counsel of record Spencer D. Freeman, The Freeman Law Firm, Inc., files this Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## I.      INTRODUCTION

In the age of the Internet, the fact that someone has never set foot in the United States, acted from inside the United States, or contracted directly in the United States, does NOT mean their business is not targeted here. Here, Defendants expressly state "ThiaAV.com [sic] is a website available from its location in the United States of America." Defendants also claim protection of and compliance to several United States laws. Defendants also host ThisAV.com on servers located in the United States, use a Content Delivery Network in the United States, earn money in the United States, expressly target ads to United States viewers, and are growing its United States market share.

Defendants assert that with residence and operations of ThisAV.com outside the United States they cannot be brought before Courts in the United States. They are wrong. Defendant purposefully directs their business efforts to the United States, and it is reasonable for them to account for their unlawful actions in United States Courts. Make no mistake, Defendants are knowingly and intentionally taking advantage of and earning money from the United States market. Such is not happenstance, as they would have the Court believe. They are hiding in other jurisdictions while earning money here. Pirates need to know that if they target the United States market, they will be held accountable here.

## II.      FACTUAL BACKGROUND

Will Co. is an award-winning Japan based entertainment company which includes a vast library of full-length adult entertainment movies offered for viewing in a fee-based model. The company is comprised of nearly 100 employees who manage over 37 registered trademarks and 50 brands, each of which explore and deliver sensuality and sexuality through artistic photography, video, and erotic stories. Based in Japan Will Co. produces content specific to

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

Japanese models, environment, and stories.  Will Co. is the producer and exclusive licensor of its own motion pictures/content.  *Declaration of Katsuhisa Aoyagi ISO Opposition to Motion to Dismiss ("Decl. K. Aoyagi")*, p 2. ¶¶ 3-6.

Since 2016, Will Co. has grown its video library to over 50,000 full length adult entertainment movies, featuring over 5000 models shot by over 300 photographer/directors.  Its brands have grown into a globally recognized leader of Japanese sensual art garnering numerous industry awards through the use of studios in Japan, exotic locations, high budget productions, engaging storylines, famed photographers, directors and models coupled with the dedication from its artists and technicians.  *Id.* at p 2, ¶¶ 7-8.

Japanese erotica is a significant niche in the United States market with high demand.  For instance, on Pornhub.com (arguably the most popular adult entertainment web site in the world) Japanese content stood near the top of most searched content in 2018 and in the top 3 in 2017, and number two in 2019.  Its popularity equates to the potential to earn significant money in the United States market.  *Declaration of Jason Tucker ISO Opposition to Motion to Dismiss ("Decl. J. Tucker")*, p 3, ¶¶ 12-16.  Unfortunately, it also raises the probability of piracy.

Will Co.'s venture into the United States market is significant, including an exclusive agreement with Digital Commerce Co., Ltd. (brand name Fanza), one of the largest distributor's adult content in the World, for the worldwide distribution of Will Co.'s content.  Through Fanza, Will Co.'s content is sold on the web site r18.com.[1]  R18.com's largest viewer base is the United States, a major reason Will Co. maintains its exclusive contract with Fanza.  Fanza solely distributes Will Co.'s content on its websites for paid on-demand viewing.  *Decl. K. Aoyagi*, p 2-3, ¶¶ 11-14.  R18.com utilizes Cloudflare in the United States to serve and display content to United States viewers.  Will Co., through the agreement with Fanza, capitalizes on and earn

---

[1]  R18.com is ranked the 1,499 most popular web site globally, per Similarweb.com on March 22, 2021.  United States is the largest viewer base at 26%, with the next largest Taiwan at 10.3%

1   money from the United States market.  Will Co. earns a revenue share from each transaction.

2   Annually, Will Co. earns in excess of $1M from United States viewers based upon efforts to

3   target the United States market.  *Id.*, p 3, ¶¶15-16.

4         That United States viewers have access to Will Co.'s Japanese erotica movies for free on

5   web sites (such as ThisAV.com) means that those interested in this niche market will not pay

6   fees to view Will Co.'s movies.  *Id.*, p 3, ¶ 18.  Will Co. expressly and intentionally markets its

7   content to the United States market, to take advantage of the Japanese niche in the United States.

8   *Id.*, p 2, ¶¶ 9-10.  Aware of the prevalence of Internet piracy of adult content and its success in

9   marketing in the United States, Will Co. sought protections in the United States through

10   copyright registrations with the United States Copyright Office.  *Id.*, p 3, ¶ 17.

11         Will Co. actively protects its market share in the United States by investigating and

12   reviewing sites that display Japanese erotica for free, looking for instances of copyright

13   infringement – where the video streaming sites are displaying Will Co.'s movies for free with

14   authorization.  *Id.*, p 3, ¶ 19.  These sites earn money by selling advertising space on the web

15   site.  The higher quality and higher quantity of the videos displayed on the video streaming sites,

16   more advertising revenue will be generated.  *Decl. J. Tucker*, p 4, ¶¶ 14-15.  Advertising revenue

17   in the United States is among the highest in the world, so generating viewers in the United States

18   for these videos streaming sites is important and profitable.  *Id.*, p 4, ¶ 16.

19         13 of Will Co.'s Japanese erotica movies registered with the United States Copyright

20   Office were discovered to be displayed without authorization on 19 separate and distinct pages

21   on the web site ThisAV.com.  *Id.*, p 4, ¶ 18.  Defendants Ka Yeung Lee ("Lee") and Youhaha

22   Marketing and Promotion ("YMP") are owners and/or operators of ThisAV.com.  ThisAV.com

23   expressly provide for a video/content take-down procedure, stated to be consistent with the

24   DCMA (Digital Millennium Copyright Act, which provides in part for take-down procedures for

25   copyright infringement on web sites.  *Id.*, p 4-5, ¶¶ 19, 21.  Will Co. submitted DMCA compliant

26   take down notices to ThisAV.com in June and July 2020 pursuant to the procedures stated on

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
- 4

FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

ThisAV.com.  Will Co's movies were not removed from ThisAV.com.  *Id.*, p 5, ¶ 22.

ThisAV.com is clearly targeted at the United States market.  Quite notably, the owners and operators of ThisAV.com state:

> Thiaav.com [sic] is a website available from its location *in the United States of America*.  We at ThisAV.com do not warrant or make any discretion about its appropriate use and availability outside the *aforementioned country*.  If the ThisAV.com website is accessed outside of the relevant location, those users must comply with their local jurisdiction regarding website access and usage.

(Emphasis added) *Id.* p 5, ¶ 26, Ex. B.  The owners/operators expressly state not only that the site is available in the United States (clearly intending it to reach the United States market), but also that availability and appropriateness of ThisAV.com is *only* warranted in the United States.[2]

That the majority of ThisAV.com is in Japanese is consistent with the desire of U. S. viewers participating in the niche market of Japanese erotica.  *Id.*, p 5, ¶ 23.  Key crucial pages of the ThisAV.com are in English, including (1) Terms and Conditions; (2) Privacy Policy; (3) DMCA; (4) 2257; (5) Advertise; and (6) User Feedback.  *Id.*, p 5-6, ¶¶ 24-30, Exs. A-F.

Other key ThisAV.com pages *are specific to only the United States.*  The "DMCA" page expressly refers to the Digital Millennium Copyright Act, a statutory scheme governing copyright infringement liability and safe harbors applicable only in the United States.  The "2257" page expressly refers to 18 U.S.C. § 2257, which imposes in part certain and specific records keeping requirements regarding models, investigated by law enforcement.   There is no reason to refer to DMCA or § 2257 on ThisAV.com unless expressly aiming at the United States market.  ThisAV.com also expressly touts content on ThisAV.com is subject to "copyright and other intellectual property rights under United States…"  *Id*., p 5, ¶ 25, Ex. A.

---

[2]  Will Co is not the only entity to treat ThisAV.com as a United States targeted website.  In fact, the National Center for Missing and Exploited Children (NCMEC) have consistently sent Notices of Child Exploitation to ThisAV.com's United States hosting service, Gorilla Servers, located in Utah. From January 2018 to August 2020, ThisAV.com received no less than 12 such notices. *Id.* p 9, ¶ 51, Ex L.    NCMEC is a United States registered non-profit operating to prevent child abductions, recover missing children, and deter and combat child exploitation. https://www.missingkids.org/footer/about

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1    Defendants assert DMCA and 2257 pages are mere happenstance due to use of a

2  template.  Poppycock.  *On each page*, Defendants expressly modify the "template" to include

3  ThisAV specific email addresses created to ensure compliance with the relevant U.S. statutes.

4  On the DMCA page, Defendants create, use and present copyright@thisav.com.  On the 2257

5  page, Defendants create, use and represent compliance@ThisAV.com.

6    In addition, Defendants operate ThisAV.com so that display to United States viewers is

7  as fast and efficient as possible.  ThisAV.com is hosted by Gorilla Servers, a United States

8  company, *on servers located in Utah.*  Owners/operators of ThisAV.com use PayPal to pay

9  Gorilla Servers.  To further assist in displaying videos in the United States, Defendants have a

10  contractual relationship with United States company Cloudflare, Inc. as a Content Delivery

11  Network ("CDN"), including cached edge delivery in the United States.  *Id.*, p 6, ¶¶ 35-36, Ex.

12  H.  A CDN is a highly-distributed platform of servers that helps minimize delays in loading web

13  page content by reducing the physical distance between the server and the user.  This helps users

14  view the same high-quality content without slow loading times.  *Id.*, p 7, ¶¶ 37-39.

15    Cloudflare provides ThisAV.com cached edge delivery.  Cached edge delivery reduces

16  the number of requests to an origin server by serving static content from a Cloudflare data center.

17  The only benefit of cached edge delivery is speed of delivery of content local to the CDN servers.

18  By caching web site content on servers closest to the end users, Cloudflare helps further improve

19  load speeds.  Whether Cloudflare caches static content depends on where visitors come from,

20  which Cloudflare data center is reached, and how often visitors request a resource or data at a

21  specific center.   Contrary to Defendants' assertions, only Cloudflare's Asian and North

22  American servers are used by ThisAV.com.  *Id.*, p 7-8, ¶¶ 40-43, Ex. I.

23    ThisAV.com is registered through GoDadday.com, an Arizona based company, and

24  utilizes a United States company to hide their identities, Domains By Proxy, LLC in Arizona.

25  Defendants did not choose ".hk" (Hong Kong), ".jp" (Japan), ".cn" (China), ".KR" (Korea), or

26  ".asia" top-level domain. Defendants choose ".com," governed and operated by Verisign, Inc., a

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
- 6

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

United States company, and generally associated with United States web sites.  United States viewers likely would not view a web site with one of the other domain name options.

ThisAV.com earns money from the sale of advertisement space on the site.  The owners and operators of the site contract with ad broker Tiger Media (a.k.a. Juicy Ads).  Tiger Media, headquartered in Canada, operates servers located in the United States.  All advertisements displayed to end users are displayed from those United States servers.  There are clearly United States vendors that advertise on ThisAV.com, including Multi Media, d/b/a Chaturbate.  *Id.*, p 9, ¶¶ 44-48.  Advertising on ThisAV.com is geo-targeted to United States viewers.  Geo-targeting means that when a viewer is known to be from the United States, advertisements for United States vendors or providers are displayed to the viewer.  *Id.*, p 8, ¶¶ 46-47.

ThisAV.com's targeting of United States viewers is working to grow a viewer base here.  For instance, from April to June 2020, ThisAV.com had 1,168,872 United States visitors, while December 2020 to February 2021 had 1,420,463.  United States maintains the fourth largest audience of ThisAV.com.  *Id.*, p 8-9, ¶¶ 49-50, Exs. J, K.  Such is an increase of 21.5%.

YMP is an admitted owner of ThisAV.com.  Lee, per his declaration, is a director of YMP and did work on ThisAV.com at all relevant time periods in the First Amended Complaint.  Further, he set up virtually every aspect of ThisAV.com.  He contracted for hosting servers in the United States and is the technical contact for the servers, contracted with CloudFlare, contracted with advertiser brokers, engaged with histats.com for visitor analytics, purchased the domain name.  Lee, by his own admissions of his activities, is or at least was at times relevant to the First Amended Complaint an operator of ThisAV.com.

### III.    ARGUMENT

Defendants moves the Court to dismiss Will Co.'s claims for copyright infringement on the ground of lack of personal jurisdiction.  Based upon ThisAV.com interjection into the United States forum, Defendants are wrong.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
 - 7

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## A.      Legal Standard

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  Plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

If a court decides to rule on personal jurisdiction without an evidentiary hearing, a plaintiff must make only a *prima facie* showing of jurisdictional facts to survive the motion.  *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 919 (9th Cir. 2011).   The "uncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor" to determine if Plaintiff has established a *prima facie* showing.  *See*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

## B.      Personal Jurisdiction

Defendants Lee and YMP are subject to specific personal jurisdiction under FRCP 4(k)(2), often referred to as the federal long-arm statute.[3]  *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006).  FRCP 4(k)(2) provides for jurisdiction over a foreign defendant if the defendant is not subject to jurisdiction in any state's court and exercising jurisdiction is consistent with the United States Constitution and law.

A court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007).  Will Co.'s claims here arise under federal law, and Defendants are not subject to personal jurisdiction of any state court.  The only dispute is

---

[3]  Will Co. does not assert general jurisdiction over Defendants, only specific jurisdiction.

FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

whether the exercise of personal jurisdiction comports with due process.

Due process requires a nonresident defendant to have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1287 (9th Cir. 1977). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462.

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the forum court to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 30 1-02 (9th Cir. 1986). The Ninth Circuit Court of Appeals articulated the following three-prong test for finding personal jurisdiction:

> (1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

### 1.    Purposeful Direction

First, Will Co. must establish the Defendants purposefully availed themselves of the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
- 9

privilege of conducting activities here *or* purposefully directed activities toward the forum. *Id*. These two inquiries are often equated to "'purposeful availment,' . . . but availment and direction are, in fact, two distinct concepts." *Id*. (citations omitted). An analysis of purposeful availment of privileges of the forum state typically centers on the defendant's actions in the forum state and is usually analyzed in connection with contract disputes. *Id*. An analysis of purposeful direction, on the other hand, is typically used in tort suits and normally centers on actions performed outside the forum that are directed toward the forum. *Id*. at 802-03.

For intentional torts, the Ninth Circuit Court applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum. *See Calder v. Jones*, 465 U.S. 783, 788-90 (1984); *Dole Food Co., Inc. v.* Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). Here, Will Co.'s copyright infringement claims are properly analyzed under *Calder* test. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Rio*, 284 F.3d at 1019-20.

Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803.

### a.   Intentional Act

Intent under the *Calder* effects test is construed as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Operation of a website constitutes an intentional act. *Brayton, supra,* 606 F.3d at 1129 ("operating a passive website was an intentional act."); *see also, Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006) (operating a website was an intentional act where the claim arose out of the website name's infringement of a trademark).

Here, Defendants' intentional acts are even clearer. In addition to the operation of ThisAV.com (enough to establish an intentional act), they expressly state the site is available in the United States, aver to comply with the DMCA, aver to comply with 18 U.S.C. § 2257, select United States hosting services with servers located in the United, and utilize a CDN

service in the United States which enabled faster and more efficient display of content in the United States including Will Co.'s copyrighted works.

YMP is an admitted owner of ThisAV.com, thus the intentional act of site operation is clear.  Lee attempts to avoid falling under the definition of intentional act by stating that all he did for ThisAV.com was as the director of YMP and not in his individual capacity.  However, Lee admitted to setting up virtually the *entire* web site, including servers, ad broker relationships, all other vendor relationships, and web site operations.  There is little else in relation to the operation of a video streaming web site.  A company director is personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.  *The Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).   Lee's attempt to distance himself from the site operation fails.

The operation of ThisAV.com alone is enough to satisfy the intentional act requirement of purposeful direction analysis for personal jurisdiction.  Here, the intentional acts of Defendants are far beyond.

### b.   Express Aiming

In the past, courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *See Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F. 3d 1218, 1229 (9th Cir. 2011).  The Ninth Circuit Court of Appeals has held that while "maintenance of a passive website alone cannot satisfy the express aiming prong ... operating even a passive website in conjunction with 'something more'— *conduct directly targeting* the forum—is sufficient." *Id.* (Emphasis added.)  To determine that "something more," the Ninth Circuit considers "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.*

The Ninth Circuit has found that the number of visitors to a site from a particular forum is

relevant to the express aiming inquiry. *Mavrix* at 1230 (concluding that there was express aiming at California, where, "[a] substantial number of hits to [defendant's] website came from California residents.") That Court has also found it "most salient the fact that [a defendant] use[s] [a plaintiff's] copyrighted photos as part of its exploitation of the [forum] market for its own commercial gain." *Mavrix*, at 1229. The relevant inquiry is whether the third-party advertisements demonstrate that Defendant exploited the United States market for commercial gain. *Id.*

In *Mavrix*, the court considered specific personal jurisdiction where the plaintiff alleged infringement by the defendant for "posting its copyrighted photos on its website." *Id.* at 1221. The defendant operated an interactive website on which visitors could post comments, vote in polls, join a membership club, and "submit news tips and photos of celebrities." *Id.* at 1222. The court noted that an Internet tracking service ranked the website "as number 3,622 out of approximately 180 million websites worldwide based on traffic." *Id.*

The *Mavrix* Court pointed out that while defendant's website courted a national audience, the defendant made "money from third-party advertisements" for California activities and had "agreements with several California businesses," including an Internet advertising agency and a wireless provider to host a version of the site. *Id.*[4] The Ninth Circuit explicitly stated web site operators expressly aim at a forum where the site "with a national viewership and scope appeals

_____

[4] The *Mavrix* court stated: "[Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain …." *See Mavrix*, 647 F.3d at 1230. *See also, IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 992-93, 995, 997 (N.D. Cal. 2010) (express aiming in copyright action where defendant owned/operated a website where users could view, copy, upload, and download photographs and moving pictures, stating that "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as [d]efendant earned revenue from advertisements that appeared on the site"). The same legal analysis applies here.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
 - 12

FREEMAN LAW FIRM, INC.
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

to, and profits from, an audience in a particular state." *Id.* at 1231.  (Such is the case here.)

Operating a passive web site in conjunction with 'something more,' *some conduct directly targeting* the forum, is sufficient to determine express aiming into the forum.  The relevant question here is whether that "something more" is present with ThisAV.com.  Defendants rely heavily on *AMA Multimedia, LLC v. Wanat,* 970 F.3d 1201 (9th Cir. 2020) to support their assertion that "something more" does not exist here.  Defendants are wrong.  The facts of *AMA* are significantly and clearly distinguishable from the facts here.[5]

The *AMA* Court distinguished *AMA* from *Mavrix* in important respects.  First, in *AMA* the subject matter of the web site did not tie the site to the forum as the subject matter had in Mavrix, as the adult content market is a global one.  *Id.*  Second, that the site featured a significant portion of the content on the site produced by United States content producers and United States based models did not mean that the site was expressly aimed at the United States.  That users were more likely to upload United States Content to the site did not mean that the site was expressly aimed at the United States.  Foreseeability that the site *may* attract United States viewers did not equate to express aiming.  *Id.* at 1210-11.

Third, the *AMA* Court found that United States based forum traffic did not have the same relevance in *AMA* as it did in *Mavrix* because of differing advertising structures.  Advertisements in *Mavrix* were tailored to forum residents showing an intent to develop a user base in the forum.  In *AMA* the advertisements were entirely geo-targeted advertisements such that regardless of the country the user was in.  The Court found that "*absent other indicia* of Wanat's personal direction, does not establish that Wanat tailored the website to attract United States traffic." *Id.* at 1211

---

[5]  In *AMA,* the plaintiff argued that four facts evidenced express aiming at the United States: (1) use of geo-targeted ads and corresponding United States revenue; (2) percentage of defendant web site the United States viewer base; (3) web site Terms of Service ("TOS") as a contract; and (4) use of United States based Domain Name Server. *Id.* at 1210.  The Court determined these facts supported a United States viewer based and defendants' awareness, but such did not mean the operators intended to build the viewership.  The *AMA* facts pale in comparison to the forum specific facts presented here.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
- 13

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1    (emphasis added).  Here, importantly, "other indicia" of direction to the United States is clearly

2    present.

3            Fourth, the Court in *AMA* dismissed the relevancy of the TOS as a contract entered with

4    United States residents.  The existence of the TOS (*which was country neutral*) did not evidence

5    effort to target the United States market.  *Id.* at 1212.  Here, the Terms and Conditions is *not* country

6    neutral but references *specifically* the United States claiming protection of United Stated intellectual

7    property laws.  Moreover, the site expressly states it is available in the United States, does not

8    warrant the site outside the United States, and it avers to comply with important United States

9    statutes (DMCA and 18 U.S.C. § 2257).

10           Finally, the *AMA* Court determined that the use of a United States based DNS server did

11   not establish express aiming.  AMA argued that the DNS service represented itself to be one of the

12   fastest providers in the United States.  The Court found such argument to be insufficient.  While

13   the use of a fast provider could be consistent with a desire to appeal to United States market, without

14   more such did not establish more of a United States market as opposed to more users globally.  *Id.*

15           While not expanded on by the *AMA* Court, a DNS server connects the domain name (the

16   web site typed into the browser by the user) with the IP address of the web site.  The location of

17   the DNS server has virtually nothing to do with where the web site may be targeted.  Hosting

18   servers and CDN servers, as with the instant matter, are different.  Web sites do not require a

19   CDN to function.  The CDN provides more efficient and faster delivery of content to the

20   geographical area in close relation to the CDN server.  CDN use itself signifies a desire to deliver

21   content to the local area.  While the location of the hosting server by itself does not confer

22   jurisdiction, the location of the server combined with the CDN indicates that the locale is a

23   targeted one.[6]

24   _____

25   [6]  Defendants would have this Court believe that they are unaware that the Cloudflare CDN may be providing service
26   to U.S. Viewers.  However, such flies in the face of the awareness of any reasonable business owner whose sole
     revenue comes from advertising and thus reliant upon viewership in certain geographical areas.  Further, Defendants

In turning away AMA's attempt to draw analogy with *UMG Recordings, Inc. v. Kurbanov,* 963 F.3d 344 (4th Cir. 2020), the *AMA* Court distinguished *UMG* by pointing out that the defendant there relied upon the DMCA, contracted with United States based advertising brokers, and relied upon United States based servers. *AMA,* 970 F.3d at 1212, fn. 8.  In *UMG* the Court found personal jurisdiction against a Russian citizen and resident with the defendant operated a web site with significant United States viewers (10% of site traffic), United States domain registrar, a registered DMCA Agent, use of United States servers, and geo-targeted ads.  *Id.* at 353-54. The instant case is analogous with *UMG*, not *AMA*.

Defendants rely upon *Bristol-Meyers Squibb Co. v. Superior Court,* 137 S. Ct. 1772 (2017) in *their* "express aiming" analysis for the apparent proposition that a web site presented to the world (which is virtually every web site) cannot have specific jurisdiction where the site is not operated.  This proposition is not true and *Bristol-Meyers* is misplaced here.  The Supreme Court ruled the *out of state* plaintiffs who had never been to or received any drugs connect with the state could not bring *their* claims against the drug company in that state for harm caused by the drug.  *Id.* at 1781-82.  Similarity of their claims to the state resident claims did not satisfy requirements of specific jurisdiction.  *Id.*  The Court did not conduct this analysis under express aiming, and it is clear from the decision that jurisdiction regarding the in-state claimants was undisturbed by the Court.

Reliance on *Bristol-Meyers* is an attempt to mislead the court.  On the issue of claim connected to the forum related activities (Sec. III.B.2 below), *Bristol-Meyers* is factually inapposite to the instant matter.  Here, Defendants' forum related activities is the intentional target and display of ThisAV.com to the United States market.  Will Co. claims that such display in the United States of Will Co. content violates its United States Copyright protections.  The

---

admittedly engaged with histats to monitor internet activity.  Defendants attempt to feign ignorance of Cloudflare's services fails.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
- 15

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

connection is clear.   There was no connection between the harm claimed by the out-of-state

plaintiffs in *Bristol-Meyers* to the drug company forum related activities.

While the "something more" connecting the operation of a web site to take advantage of the

United States market was lacking in *AMA,* it is present here, similar to *UMG* and *Mavrix.*[7]  Personal

jurisdiction inquiry is designed to ensure defendants are not "haled into a jurisdiction solely as a

result of random, fortuitous, or attenuated contacts."  *Burger King Corp v. Rudzewicz*, 471 U.S.

562, 475 (1975).  It protects him/her from having to defend in a forum where it could not be

anticipated to be sued.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1990).

The facts of the instant case make clear that Defendants contact with the United States is not

random, fortuitous or attenuated.  Rather, it is intentional, consistent, and expressly done.

Defendants here themselves state that ThisAV.com is intended for the United States

market, stating:

> ThiaAV.com [sic] is a website available from its location in the United States
> of America.  We at ThisAV.com do not warrant or make any discretion about
> its appropriate use and availability outside of the aforementioned country.  It
> the ThisAV.com website is accessed outside of the relevant location, those
> users must comply with their local jurisdiction regarding website access and
> usage.

Unequivocally, ThisAV.com is presenting as a United States web site intended for broadcast and

viewing in the United States.

Further, ThisAV.com is hosted in on servers located in Utah while Defendants contract with

United States -based Cloudflare, Inc. for CDN servers, utilizing Cloudflare's services both in Japan

and throughout the United States.[8]  Separate servers display videos in Japan and in the United

States.  The sole reason to utilize a CDN in the United States is to ensure faster and more efficient

---

[7]  The facts discussed in Mavrix are not facts required to show "something more," it is just that "something more"
exist which evidence express aiming at the forum.

[8]  Contrary to Defendants implications, Will Co. does *not* rest its jurisdictional argument solely on the fact that the
web site is hosted in the United States.  That is just one fact of many that establish the web site is targeted to the
United States.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
- 16

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
(253) 383-4500 - (253) 383-4501 (fax)

display of content to United States users (e.g. reducing buffering of videos).  The use of the CDN alone shows an intent to target the United States market.  Defendants argue that the CDN is an irrelevant fact because Cloudflare offers CDN services for display all over the world.  However, only Cloudflare's Asia and North America servers are used by ThisAV.com.

The content of the web pages of ThisAV.com also make clear the intent to build a United States viewer base.  One web page is titled "2257," referencing United States law 18 U.S.C. Sec. 2257 which in part mandates certain and specific record maintenance regarding models for web sites displaying adult content.  The page itself addresses record keeping, noting the site does not produce the content and any record inquiries should be directed at the content producer.  The *only* inquiries regarding 18 U.S.C. § 2257 required records would be United States law enforcement agencies enforcing the laws of the United States.  The explicit reference to § 2257 is a clear indication that Defendants intend to broadcast in the United States such that they would be subject to United States law.

Defendants also reference United States specific law, the Digital Millennium Copyright Act, a 1998 United States law which amended certain sections of the Copyright Act of 1976.[9] Defendants state that "[i]n accordance with the Digital Millennium Copyright Act" ThisAV will respond to claims of copyright infringement.  Defendants also assert that any misrepresentations regarding infringements may subject the claimant to liability under United States law.  Liability under the DMCA can *only* occur in the United States.  The *only* copyright takedown procedures expressly stated on ThisAV.com are those under United States law.  Such illustrates Defendants' desire to target the United States market and take advantage of the United States market, and their clear anticipation of receiving notices of violation of United States copyrights.

ThisAV.com expressly references the United States, including DCMA, 2257, informing the

---

[9]  Belying reasonableness, Defendants state that references to 2257 and DMCA are merely due to use of a template. Yet, Defendants manually created and manually inserted email addresses on these pages for purposes of complying with the statutes.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION [NO. 3:20-
cv-05802-BHS]
 - 17

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

user that United States intellectual property rights protects content on the site, and expressly informing the user that the site is available in the United States. Defendants would have this court believe that these references are mere meaningless happenstance because the Defendants used a template to create the cite, and such language was included in the template. That the web site was created from a template is not surprising nor unique, such is the way of Internet commerce. However, that a template was used does not alter the fact that not only did Defendants use this language, *they altered the language specific to ThisAV.com and create emails addresses to maintain compliance with relevant statutes.* Defendants' claim fails.

Defendants utilize several ad brokers for ThisAV.com, including Tiger Media whose servers are located in the United States. It is undisputed that advertisements on ThisAV.com are geotargeted, meaning that United States viewers will see advertisements specifically intended for United States viewers. Defendants rely on *AMA v. Wanat* in arguing that geo-targeted ads do not establish express aiming. In *AMA,* the court found geo-targeting not meaningful because of the lack of other indicia of targeting the United States. Here, there is significant other indicia of targeting, as stated above.[10]

Defendant anticipated, desired, and achieved a substantial United States user base. Defendants knew they were cultivating a United States market and desired to do so. *See Mavrix*, 647 F.3d at 1230. That ThisAV.com utilizes United States CDN servers to ensure faster and more efficient delivery of video and images to United States viewers, manages the United States CDN

---

[10] Defendants alleged that relationships with advertisers are indirect relationships, linked only through brokers. This argument is misleading. Whether through ad brokers or directly, the reality is that through the ThisAV.com brokers sell advertising space to United States vendors – which is the most valuable ad space to sell. To argue that ThisAV.com owners are simply benefiting bystanders to such relationships is without any sense of credibility. When an Internet web site makes most of its revenue through the sale of ad space, the owners and operators are keenly aware of the value of the ad spaces and where they are being sold. Such arguments did not work in *Mavrix*.

server from United States IP addresses, expressly attempts to comply with two United States statutes specific to the content and function of ThisAV.com, and expressly sells advertising space specifically detailed for United States viewers establishes that the owners/operators were not just aware that its websites "exploited (and threatened) United States copyright interests" but intended to develop the market.  Moreover, Defendants here explicitly state *on the site* that site is available to the United States market.  See *Datatech Enters. LLC v. FF Magnat Ltd., No. C 12-04500 CRB, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sep. 14, 2012)* (granting an injunction, concluding a reasonable probability that plaintiff (an adult-oriented content producer) could establish personal jurisdiction under FRCP 4(k)(2) where defendant's file-sharing website received "a 'substantial number of hits' from the United States and directly profited from those hits" and where "several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) United States copyright interests"); *Cybernet Entertainment, LLC v. IG Media, Inc., et al.,* 2014 U.S. Dist. LEXIS 189902 (Court concluded that Defendants were aware of "cultivating a United States market and desired to do so" where there was substantial United States web sites traffic, the site contained advertising targeting U.S. viewers, made money from advertisers from users in the United States, and defendants had contracts and agreements with United States entities (including a DMCA Agent)).

Based on express statements that ThisAV.com is available for viewing in the United States, the clear invocation of United States laws (DMCA, 2257, and intellectual property laws), the use of hosting servers and CDNs in the United States, the use of United States specific geo-targeted ads which generate Defendants revenue, registration of the domain names and privacy services in the United States, and developing millions of United States viewers, Will Co. has sufficiently established a *prima facie* case of express aiming at the United States.  *See Mavrix*, 647 F.3d at 1231.

1

### c.      Harm In Forum

2

The final prong of the *Calder-effects* test is the requirement that the conduct at issue

3

caused foreseeable harm in the forum.   It is not required that the brunt of harm be suffered in

4

the forum.  *Fiore v. Walden*, 657 F.3d 838, 853 (9th Cir. 2011); *Brayton Purcell LLP v. Recordon*

5

*& Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010); *Yahoo! Inc. v. La Ligue Contre Le Racisme*,

6

433 F.3d 1199, 1207 (9th Cir. 2006). Instead, the foreseeable harm "element is satisfied when

7

defendant's intentional act has 'foreseeable effects' in the forum."   *Fiore*, 657 F.3d at

8

853; *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

9

In determining the location of a corporation's injury, the Ninth Circuit recognizes that a

10

corporation can suffer economic harm both where the bad acts occurred and where the

11

corporation has its principal place of business.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

12

F.3d 1218, 1231 (9th Cir. 2011), *citing Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th

13

Cir. 2002). "[J]urisdictionally sufficient harm may be suffered in multiple forums." *Mavrix*, 647

14

F.3d at 1231.   Harm can occur where the bad acts occurred, where the corporation has its

15

principal place of business, or where a corporation is incorporated.  *Dole Food Co. v. Watts*, 303

16

F.3d 1104, 1113 (9th Cir. 2002).   Jurisdictionally sufficient harm may be suffered in multiple

17

forums.  *Id.*   In fact, personal jurisdiction may be found where only a small portion of harm is

18

felt in the forum.  *See Keeton v. Hustler Magazine*, 465 U.S. 770, 780 (1984).

19

The economic loss caused by the intentional infringement of a plaintiff's copyright is

20

foreseeable.  *Mavrix*, 647 F.3d at 1231.  It is clear in the instant matter that it was foreseeable

21

that Defendants' intentional infringement of Will Co.'s copyrighted works would cause harm in

22

the United States Forum.   Noteworthy is that Will Co. supplied Defendants with DMCA

23

compliant copyright notices, informing Defendants of the United States copyrights and of the

24

infringements.

25

Will Co. went through expensive efforts to copyright its works with the United States

26

Copyright Office.  Thus, both Will Co. and its works are registered and protected in the United

States.  While Will Co. is formed in Japan, Will Co. contracts for the promotion and sale of its content in the United States, earning significant money in the United States.  Will Co. entered into a contractual relationship with Fanza for exclusive distribution of its content, including and intentionally in the United States.  Will Co. earns a revenue share of sales in the United States.  So popular is Will Co.'s content in the United States that Will Co. earns well over $1M per year in its collected revenue share from United States distribution.

Here, the bad acts *are* occurring in the United States as ThisAV.com is displayed in the United States, currently the fourth largest viewer base with a million United States viewers.  Defendants are actively displaying the site to United States market.  Defendants themselves expressly seek protections of United States laws and expressly inform Internet users that the web site is available in the United States.  It is far from "absurd" for Defendants to be on notice they could be brought into United States courts – it should be expected.

Defendants clearly intended to display videos on ThisAV.com in the United States and to United States viewers.  Accordingly, they knew that harm would be caused in the United States by any infringements.  It was foreseeable that harm to Will Co. would occur in the United States.  Will Co. has adequately alleged that it has suffered harm in the United States as a result of Defendant's actions, meeting the *Calder* test.

### 2. Arises out of Defendant's Forum-Related Activities

Will Co. must also show that its claims arise out of or relate to Defendants' forum-related activities. *Schwarzenegger*, 374 F.3d at 802. A claim arises from forum-related activities if plaintiff "would not have been injured 'but for'" defendant's conduct directed toward the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  The "'arising out of' requirement" should not be read restrictively; rather, the "but for" test merely "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum" and "preserves the essential distinction between general and specific jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds by* 499 U.S. 585.

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

Will Co. sells viewing of its copyrighted videos to United States viewers in the United States.  Defendants are each one of the owners/operators of ThisAV.com, utilizing a United States based CDN to distribute the infringed videos to United States viewers.  ThisAV.com is targeted to United States viewers, with United States based advertisers.

Will Co. has been harmed in the United States because Defendants targeted the United States and caused Will Co.'s copyrighted works to be displayed and viewed on its sites in the United States.  Will Co.'s injury in the United States stems from the substantial amount of United States traffic to Defendant's websites.  Thus, Will Co.'s claims arise out of Defendant's United States -related activities through ThisAV.com. *See Mavrix*, 647 F.3d at 1228; *Rio*, 284 F.3d at 1021.

### 3.     Reasonableness

Where the first two requirements of specific personal jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable"; that is, "it must comport with 'fair play and substantial justice.'" *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at 476). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Schwarzenegger*, 374 F .3d at 802.  The burden is on the Defendants to prove unreasonableness of the personal jurisdiction.  In determining reasonableness, courts consider seven factors:

> (1)     the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021.

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

Here, all seven factors support exercising jurisdiction over Defendants and Defendants have has failed to present a compelling case that jurisdiction is unreasonable. First, as owners/operators of ThisAV.com, Defendants have extensively interjected in the forum. They state ThisAV.com is available in the United States, they cite and seek protections of United States laws, they have contractual relationships in the United States, they broadcast in the United States, they have servers in the United States, and utilized CDN's in the United States for more efficient local delivery of videos.

Second, any burdens litigating from Hong Kong or Canada are minimal in today's world. Virtually all discovery can be handled over various Internet tools and services. Written discovery, depositions, and even mediations can be held without their direct actual presence in the United States. Regarding appearing in-person at trial, if necessary, business travel to Washington from Canada and Hong Kong is quite common and testimony could be presented via video feed.

Third, Defendants' assertion that exercising jurisdiction here would seriously impinge the sovereignty of Hong Kong is misplaced. Contrary to *AMA*, Defendants here have significantly interjected themselves into the United States market. Holding Defendants accountable in the United States for their actions in the United States hardly impinges on the sovereignty of any other nation.

Fourth, United States District Courts certainly have significant interests in resolving disputes of United States copyright infringements by foreign defendants when the infringements are of United States registered copyrights and are targeted in the United States. By Defendants targeting ThisAV.com in the United States, this District Court can surely demonstrate a particular interest in this case. Will Co. registers its works in the United States and markets to and earns significant revenue from United States consumers.

Fifth, Defendants argue a lack of judicial efficiency here, arguing that no party or witness is located in the United States. However, Defendants fail to offer a more efficient forum to decide infringement of *United States copyrights*. Most importantly, the videos displayed in this case were

served from servers and Content Delivery Network located in the United States.

Sixth, since the servers that displayed Will Co.'s content on ThisAV.com are located in the United States and United States Copyrights have been infringed, United States is the most convenient forum to obtain effective relief. These servers are more easily accessed in discovery, which would then be governed by this Court. Will Co.'s works are protected by United States copyrights and its members are based in the United States.

Seventh, Defendants argue that their "home countries" respect copyrights and therefore are adequate alternative forums for this suit. However, these infringements occurred *in the U. S.* through intentional acts of Defendants. United Stated federal judges are far more equipped to apply United States copyright laws than any other country.

### C.   Jurisdictional Discovery

District courts have broad discretion to grant discovery to establish jurisdiction. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *see also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Such discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986); *see also Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977). "The Court must weigh the prejudice to the complaining party if discovery is denied." *Andrews v. Pride Indus.*, 2015 U.S. Dist. LEXIS 27959, 2015 WL 1014133, at *5 (E.D. Cal. Mar. 6, 2015) (citing *Laub*, 342 F.3d at 1093). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Id*. The Ninth Circuit may find an abuse of discretion where a court denies discovery where such discovery "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *Rutsky & Co. Ins. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

Discovery should ordinarily be granted where 'pertinent facts bearing on the question of

1  jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'"

2  *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)

3  (quoting *Data Disc, Inc. v. Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir.

4  1977)).  The district court has broad discretion to permit or deny discovery. *Id.*  The district court

5  could properly exercise its discretion to refuse jurisdictional discovery "[w]here a plaintiff's

6  claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the

7  face of specific denials made by the defendants." *Terracom v. Valley Nat. Bank*, 49 F.3d 555,

8  562 (9th Cir. 1995).

9         To the extent that the Court may find Will Co. to have fallen short of a prima facie case

10  that Defendants have sufficient contact with the United States, jurisdictional discovery will

11  establish the precise extent ThisAV.com is intentionally targeted to United States viewers,

12  including internal memorandum and correspondence regarding the United States market,

13  contracts with United States vendors, monies earned through United States advertisers,

14  communications with United States based vendors, and communications and agreements with

15  advertiser brokers which may evidence Defendants bias to the United States Market.  Will Co.

16  has established ThisAV.com is distributed significantly to United States viewers, videos are

17  distributed from United States based servers, and the owners/operators of ThisAV.com have

18  established relationships with United States based advertisers.   These are not attenuated

19  jurisdictional allegations but based in facts presented to the Court.

20         While Will Co. steadfastly believes the burden has been met for purposes finding

21  personal jurisdiction against Defendants, if the Court were to disagree Will Co. respectfully

22  submits that jurisdictional discovery should be permitted and ordered before deciding upon the

23  instant motion.

24                              **IV.   CONCLUSION**

25         For the reasons stated herein, it is respectfully requested that the Court deny Defendants'

26  motion to dismiss for lack of personal jurisdiction.

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)

1    RESPECTFULLY SUBMITTED this 29th day of March 2021.

2

3                                FREEMAN LAW FIRM, INC.

4                                      /s/ Spencer D. Freeman
                                 Spencer D. Freeman, WSBA #25069
5                                Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**FREEMAN LAW FIRM, INC.**
1107 ½ Tacoma Avenue South
Tacoma, WA 98042
(253) 383-4500 - (253) 383-4501 (fax)